IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA


UNITED STATES OF AMERICA,        )    CASE NO: 4:16CR3121
                                 )
                Plaintiff,       )
                                 )    Lincoln, Nebraska
vs.                              )    February 22, 2017
                                 )    11:02 a.m.
BRENNA C. DELL,                  )
                                 )
                Defendant.       )


TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE CHERYL R. ZWART
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:          Martin Klein
                            Assistant United States Attorney
                            100 Centennial Mall North
                            Suite 487, Federal Building
                            Lincoln, NE  68508

For the Defendant:          Shirley Mora James
                            Mora James Law Firm
                            P.O. Box 21772
                            Lincoln, NE  68542


Proceedings recorded by electronic sound recording, transcript
produced by transcriptionist.

2

1          February 22, 2017

2          (Whereupon the following proceedings

3           took place in open court at 11:02 a.m.:)

4          (Call to Order of the Court.)

5          THE COURT:  We're on the record in case number

6    4:16CR3121, United States of America versus Brenna C. Dale --

7    Dell, excuse me.

8          Counsel, please enter your appearance.

9          MR. KLEIN:  Your Honor, please show Martin Klein for

10   the United States.

11         MS. MORA JAMES:  Shirley Mora James on behalf of Ms.

12   Dell.

13         THE COURT:  Ms. Dell, you're here today because I've

14   been told that you want to enter a plea of guilty.  Is that

15   true?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  I need to explain to you that I am not

18   your sentencing judge, and I'm not the judge who's going to

19   determine whether this guilty plea is accepted and whether your

20   plea agreement is accepted.  Those matters will be taken up by

21   Judge Gerrard, who is your sentencing judge.  But what I can do

22   for you today is gather some information from you and make a

23   recommendation to Judge Gerrard on those issues.

24         Do you agree to proceed before me?

25         THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Please raise your right hand.

2          Do you solemnly swear to tell the truth, the whole

3    truth, and nothing but the truth?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  You're now under oath.  You've sworn to

6    tell the truth, which means if you lie during this proceeding,

7    you could be separately prosecuted for the crime of perjury.

8    Do you understand that?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  At this time I'm going to have Mr. Klein

11    describe for you the charges to which you intend to plead

12    guilty and the possible penalty for those charges.

13          Mr. Klein.

14          MR. KLEIN:  Thank you, Your Honor.

15          Ms. Dell, this plea agreement contemplates that

16    you're going to plead guilty to Count II of the indictment

17    charged against you.  That count alleges that on or about May

18    27 of 2016, here in the District Nebraska, you did knowingly

19    and intentionally distribute five grams or more of

20    methamphetamine, its salts, isomers and salts of its isomers, a

21    Schedule II controlled substance, in violation of United --

22    Title 21 of United States Code, Sections 841(a)(1) and

23    841(b)(1).

24          Ma'am, the possible penalty you face should you be

25    convicted of that offense would be a prison term of five to 40

4

1    years, a fine of up to $5 million, both such fine and

2    imprisonment, a term of supervised release after incarceration

3    of not less than four years, and a $100 special assessment.

4            THE COURT:  Do you understand the charges?

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  Do you understand the possible penalties?

7            THE DEFENDANT:  Yes, ma'am.

8            THE COURT:  Having heard that information again, is

9    it still your intent to plead guilty?

10           THE DEFENDANT:  Yes, ma'am.

11           THE COURT:  I have in front of me a petition to enter

12   a plea of guilty and a plea agreement.  Do you have those

13   documents in front of you?

14           THE DEFENDANT:  Yes, ma'am.

15           THE COURT:  It appears that you signed the petition

16   on the 19th of February, and the copy I have of the plea

17   agreement here isn't signed.  Is there a signature on it?

18           MR. KLEIN:  I apologize, Your Honor.  I scanned the

19   --

20           THE COURT:  No worries.

21           MR. KLEIN:  -- wrong documents when I sent them to

22   you.

23           THE COURT:  No, no worries at all.  I just -- It's

24   part of the check I do when I'm up here.

25           Okay.  It appears that you signed the plea agreement

1     on January 12th.  Is that correct?

2                 THE DEFENDANT:  Yes, ma'am.

3                 THE COURT:  On the 19th of February, when you went

4     over the petition, were you under the influence of drugs or

5     alcohol or anything that would impair your thinking?

6                 THE DEFENDANT:  No, ma'am.

7                 THE COURT:  When you went over the plea agreement on

8     January 12th, were you under the influence of anything?

9                 THE DEFENDANT:  No, ma'am.

10                THE COURT:  Are you under the influence of anything

11    right now?

12                THE DEFENDANT:  No.

13                THE COURT:  Going to the petition, was your attorney

14    with you when you went over the petition?

15                THE DEFENDANT:  Yes.

16                THE COURT:  Did you read the questions in the

17    petition?

18                THE DEFENDANT:  Yes.

19                THE COURT:  Did you answer the questions out loud?

20                THE DEFENDANT:  Yes.

21                THE COURT:  Did you write down the answers or did Ms.

22    Mora James do that?

23                THE DEFENDANT:  I did.

24                THE COURT:  All right.  Were the answers you wrote

25    down the truth?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And after going through the petition, did

3     you sign it?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Going to the plea agreement.  Was Ms.

6     Mora James with you when you went over the plea agreement?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Did you read the plea agreement?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Did she explain the plea agreement to

11     you?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Were there any questions you had about

14     the plea agreement that she was unable to answer?

15          THE DEFENDANT:  No.

16          THE COURT:  And after going through the plea

17     agreement, did you sign it?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Has anybody threatened you in any way to

20     get you to plead guilty?

21          THE DEFENDANT:  No.

22          THE COURT:  Has anybody promised you anything other

23     than the promises in the plea agreement itself to get you to

24     plead guilty?

25          THE DEFENDANT:  No.

7

1          THE COURT:  Do you understand that if the Court

2     accepts your plea of guilty, you will be found guilty of a

3     felony?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand you have the right to

6     plead not guilty and make the Government try to prove this case

7     at trial?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand you are giving up your

10    trial rights by pleading guilty?

11         THE DEFENDANT:  Yes.

12         THE COURT:  You've been represented in this case by

13    Ms. Mora James, is that correct?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  Do you believe that she has investigated

16    this case sufficiently so that you know what to do today?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Are you satisfied with her

19    representation?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  Do you understand that if you chose to go

22    to trial instead of pleading guilty, you would have the right

23    to counsel representation at that trial at no cost to you?

24         THE DEFENDANT:  Yes.

25         THE COURT:  As that applies to you, Ms. James would

8

1    be there with you at that trial, she would represent your

2    interests, and she would never send you a bill for that

3    service.  Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Do you understand that if you chose to go

6    to trial you would have a jury trial?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand that at that trial you

9    would have the right to see and hear any witnesses who

10   testified against you and to have them cross-examined on your

11   behalf?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand you would have the

14   right to call witnesses for you, and if they would not come

15   voluntarily, you could get a court order called a subpoena to

16   make them come and testify?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you understand that if you chose to go

19   to trial you could testify yourself if you wanted to?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that in the

22   alternative, you could remain silent and say nothing?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And do you understand that if you

25   remained silent at the trial, the jury would not be allowed to

9

1          consider that silence in deciding whether you are guilty?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  And finally, do you understand that at

4          that trial the Government will not get a conviction against you

5          unless it was able to prove to every single juror that you are

6          guilty beyond a reasonable doubt?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  Are you willing to give up all of those

9          trial rights, including your right to counsel representation at

10         a trial, and plead guilty in this case instead?

11                   THE DEFENDANT:  Yes, ma'am.

12                   THE COURT:  With a guilty plea you will have a felony

13         record, and with that felony record comes the loss of civil

14         rights.  Those rights include the right to vote, the right to

15         serve in a jury, the right to hold a public office, the right

16         to carry a weapon.  You can also lose federal benefits, but you

17         will lose rights.  Do you understand that?

18                   THE DEFENDANT:  Yes.

19                   THE COURT:  And knowing that you will lose civil

20         rights, are you willing to plead guilty?

21                   THE DEFENDANT:  Yes, ma'am.

22                   THE COURT:  Finally, there are community consequences

23         that come with having a felony record.  The ones that come to

24         mind most often are the difficulty with employment and the

25         difficulty with housing.  Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Knowing that those consequences exist and

3   that the Court can do very little to help you with them, are

4   you willing to plead guilty?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  You're looking at a sentence in this case

7   of a minimum of five years and up to 40 years in prison, a

8   possible fine of up to five -- it says 5,000; is it supposed to

9   be five million?

10         MR. KLEIN:  It's supposed to be five million, Your

11  Honor.

12         THE COURT:  All right.  Let's get that fixed in the

13  petition.  Do you have the original, Jeri?

14         Okay.  Let's just add a comma and three zeros, and

15  we'll get that correct.  Thank you.

16         (Petition being corrected.)

17         THE COURT:  All right.  We've corrected it to state

18  that it is up to a $5 million fine.  And everybody has signed

19  off on that.

20         Okay.  Now, let's go back.  You're looking at a

21  sentence in this case of a minimum of five years and up to 40

22  years in prison, a possible fine of up to $5 million could be

23  imposed in addition to any term of imprisonment, supervised

24  release of four years, and a $100 mandatory special assessment.

25  Is that your understanding of what you're facing?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Has Ms. Mora James explained the

3     sentencing guidelines to you?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Has she explained that those guidelines

6     provide the starting point that Judge Gerrard will look at in

7     determining what your sentence ought to be?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Do you understand that Judge Gerrard is

10    going to consider all of your relevant conduct in determining

11    your sentence?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  For example, he's going to consider such

14    things as how much drugs were involved, whether guns were

15    involved in the distribution of drugs, whether you played a

16    leadership or managerial role in drug distribution, whether you

17    have a criminal history and the extent of that history, those

18    types of things.  Do you understand that?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  And once he considers all of the relevant

21    conduct and he makes his findings, do you understand that he

22    can sentence you within the guidelines that you've discussed

23    with Ms. Mora James, but he doesn't have to; he can go above or

24    below those guidelines based upon his determinations, do you

25    understand that?

12

1       THE DEFENDANT:  Yes, ma'am.

2       THE COURT:  And once Judge Gerrard determines how

3    much time you will spend in prison, do you understand you will

4    be required to serve all of that time, and the most you can get

5    off that sentence is 54 days a year if you earn good time --

6       THE DEFENDANT:  Yes.

7       THE COURT:  -- do you understand?

8       THE DEFENDANT:  Yes.

9       THE COURT:  Now, after you serve your time in jail,

10   you will be placed on supervised release for four years.  I

11   want to make sure you know what that means.

12       As part of your sentencing order in this case, Judge

13   Gerrard is going to include a list of rules that you have to

14   follow for four years after you get out of jail.  Those are

15   called conditions of release.  Do you understand that?

16       THE DEFENDANT:  Yes, ma'am.

17       THE COURT:  Now, as the name would imply, conditions

18   of release, if you violate those conditions, you can be brought

19   back to court and sent back to jail.  Do you understand that?

20       THE DEFENDANT:  Yes, ma'am.

21       THE COURT:  And do you understand that if you violate

22   those conditions by committing another crime and are found

23   guilty of that separate crime, your sentence on that separate

24   crime could be greater than it otherwise would have been merely

25   because you were still serving a sentence on this crime when

1    you committed the next one.  Do you understand?

2                    THE DEFENDANT:  Yes, ma'am.

3                    THE COURT:  You will be required to pay a $100

4    mandatory special assessment.  Were you aware of that?

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  Is there restitution in this case?

7                    MR. KLEIN:  No, Your Honor.

8                    THE COURT:  You have a plea agreement with the

9    Government which outlines your agreement regarding what should

10   happen at the time of sentencing.  Do you understand that this

11   plea agreement is between you and the Government; it is not

12   necessarily binding on Judge Gerrard?

13                   THE DEFENDANT:  Yes.

14                   THE COURT:  At this time I'm going to have Mr. Klein

15   describe that plea agreement to you.  I want you to listen as

16   he does that.  I will ask you questions about what he says.

17                   Mr. Klein.

18                   MR. KLEIN:  Thank you, Your Honor.

19                   Ms. Dell, in summary, this plea agreement

20   contemplates that you are going to plead guilty to Count II of

21   the indictment as charged against you.  For that guilty plea,

22   the United States agrees that it will dismiss Count I of the

23   indictment against you at the time of sentencing, and that you

24   will not be federally prosecuted in the District of Nebraska

25   for any drug trafficking crimes that were disclosed in the

14

1    discovery material delivered to Ms. Mora as of this date.

2            In part V, the plea agreement contemplates that you

3    will be held responsible beyond a reasonable doubt for at least

4    five but less than 20 grams of actual methamphetamine.

5            If the -- That if the -- If you're found to be

6    entitled to an offense level reduction for acceptance of

7    responsibility, the United States will move for the third level

8    of responsibility reduction.

9            The parties agree that you do not meet the criteria

10   for the safety valve.

11           And part C -- V C, the parties agree that you may not

12   request or recommend any additional downward adjustments,

13   departures, including criminal history departures.

14           And part V F, the parties will recommend that you be

15   sentenced to the low end of the advisory guideline range.

16           And that pursuant to part VI, you waive appeal and

17   collateral attack as described in part VI.

18           THE COURT:  Ms. Mora James, does that summarize

19   fairly the terms of the plea agreement?

20           MS. MORA JAMES:  Yes, Your Honor, it does.

21           THE COURT:  All right.  Ms. Dell, did you listen as

22   Mr. Klein described the terms of the plea agreement?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Does his description match your

25   understanding of your agreement with the Government?

15

1          THE DEFENDANT:  Yes.

2          THE COURT:  There's a few things I need to go over

3     with you on this plea agreement.

4          First of all, you are agreeing that you should be

5     held responsible beyond a reasonable doubt for at least five

6     but less than 20 grams of actual methamphetamine.  Did you

7     agree to that?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Are you responsible for that amount?

10         THE DEFENDANT:  Yes, I am.

11         THE COURT:  This being a drug case, the Government

12    may give you an opportunity to provide information to the

13    Government so the Government can prosecute other people.  That

14    is called cooperation.

15         If you decide that you're going to provide

16    information to the Government, do you understand the Government

17    is not required to do anything in exchange for that unless you

18    provide what the Government believes to be substantial

19    assistance?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  Do you understand that it is up to the

22    Government to decide whether any information you provide was of

23    substantial assistance or not?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that if you choose to

16

1    provide information to the Government and the Government

2    believes it was of substantial assistance, the Government will

3    consider asking that your sentence be lowered?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And do you understand that if it makes

6    that request on your behalf, the request actually goes to your

7    sentencing judge, who is Judge Gerrard?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And do you understand that Judge Gerrard

10   is not required to lower your sentence even if the Government

11   asks him to?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  You have a waiver of appeal and

14   collateral attack.  I need to make sure you know what you're

15   giving up here.

16             Everything that's been done by this Court is subject

17   to being looked at by another court to make sure it was done

18   right.  That process is called an appeal, and the court that

19   looks at it is the Eighth Circuit Court of Appeals.  Do you

20   understand?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  Do you understand that under the terms of

23   this plea agreement, you're giving up your right to that appeal

24   process unless you are claiming that Ms. Mora James provided

25   you with ineffective assistance of counsel?

17

1          THE DEFENDANT:  Yes.

2          THE COURT:  I'm sorry?

3          THE DEFENDANT:  Yes, I understand.

4          THE COURT:  All right.  Collateral attack is

5     different than an appeal.  Collateral attack allows you to

6     challenge your conviction and sentence by claiming your

7     constitutional rights were violated.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that under the terms of

10    this plea agreement you're giving up your right to that type of

11    proceeding as well, unless you are claiming that what you are

12    admitting to here today is not a crime, or you are claiming

13    that Ms. Mora James provided you with ineffective assistance of

14    counsel.  Do you understand?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you understand that your waiver of

17    appeal and collateral attack applies both to your conviction

18    and to the sentence you've not yet received?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Have you had a chance to talk about your

21    rights to appeal and collateral attack with your attorney?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Having had those conversations and

24    considered your options, have you decided to give up your right

25    to appeal and your right to collateral attack with the

18

1          exceptions listed in the plea agreement?

2                    THE DEFENDANT:  Yes, ma'am.

3                    THE COURT:  Has anybody made any promises to you that

4          are not in this plea agreement?

5                    THE DEFENDANT:  No.

6                    THE COURT:  Do you understand that whether you plead

7          guilty or whether you're found guilty at trial you could get

8          the same sentence?

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  Putting it a different way, do you

11         understand there is no guarantee your sentence will be less

12         because you pled guilty?

13                   THE DEFENDANT:  Yes.

14                   THE COURT:  At this time, then, I'm going to have Mr.

15         Klein explain the factual basis of your plea.  What that means

16         is he's going to outline what he would present at trial as far

17         as facts.  I want you to listen as he does that.  I will ask

18         you questions about what he says.

19                   Mr. Klein.

20                   MR. KLEIN:  Thank you, Your Honor.

21                   Ms. Dell, it would be the Government's intention that

22         if this case were to proceed to trial, the Government would put

23         on witnesses and present evidence to a jury that would show

24         that on or about May 27 of 2016, a cooperating individual made

25         arrangements with you to purchase one-half ounce of

1    methamphetamine for $550 in Grand Island, Nebraska.

2    Investigators with the Central Nebraska Drug and Safe Streets

3    Task Force set up that controlled purchase utilizing that CI.

4          During the controlled buy, the CI met with you at a

5    residence where the CI paid you $550, and you delivered to the

6    CI one-half ounce of methamphetamine.

7          That the CI gave the suspected methamphetamine to

8    investigators, and when sent to the Nebraska State Patrol crime

9    laboratory, purity testing showed the suspected methamphetamine

10   you delivered contained at least 10 grams of methamphetamine

11   actual.

12         And that these events occurred within the District of

13   Nebraska.

14         THE COURT:  Ms. Mora James, do you agree that if this

15   case went to trial that evidence would go before a jury?

16         MS. MORA JAMES:  Unfortunately, yes.

17         THE COURT:  All right.  Ms. Dell, did you listen as

18   Mr. Klein described the evidence against you?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  Is what he said true?

21         THE DEFENDANT:  Yes.

22         THE COURT:  On May 27th of 2016, were you in

23   Nebraska?

24         THE DEFENDANT:  Yes.

25         THE COURT:  While in Nebraska, did you distribute

20

1     methamphetamine?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Was the amount you distributed greater

4     than five grams?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Did you know that what you were

7     distributing was, in fact, methamphetamine?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Any additional questions, Mr. Klein?

10             MR. KLEIN:  No, Your Honor.

11             THE COURT:  Ms. Mora James?

12             MS. MORA JAMES:  No, Your Honor.

13             THE COURT:  Mr. Klein, do you believe the guilty plea

14    is knowing, intelligent and voluntary, and that there is a

15    factual basis for it?

16             MR. KLEIN:  Yes, Your Honor.

17             THE COURT:  Ms. Mora James, do you agree?

18             MS. MORA JAMES:  Yes.

19             THE COURT:  Ms. Dell, do you want this Court to

20    accept your plea of guilty?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  Do you have any questions of me before I

23    proceed?

24             THE DEFENDANT:  No, ma'am.

25             THE COURT:  To Count II of the indictment which

21

1      alleges that on or about May 27th of 2016, while in the

2      District of Nebraska, you did knowingly and intentionally

3      distribute five grams or more of methamphetamine, what do you

4      plead?

5              THE DEFENDANT:  Guilty.

6              THE COURT:  I do find that your guilty plea is

7      knowing, intelligent and voluntary, and that there is a factual

8      basis for it.  I will recommend to Judge Gerrard that he accept

9      your plea of guilty.  I will also recommend that he accept your

10     plea agreement.

11             He'll take up the issue of your plea agreement at

12     sentencing on June 2nd at 9:30, if that works for everyone?

13             MR. KLEIN:  Yes, Your Honor.

14             THE COURT:  Does that work for you, Ms. Mora James?

15             MS. MORA JAMES:  Do we have any time sooner than

16     that?

17             THE COURT:  This is, by our local rules, the amount

18     of time that we set out for -- unless you believe that there's

19     going to be a time served on this.  That's the only time when I

20     shorten it up.

21             MS. MORA JAMES:  What time was that, Your Honor?

22             THE COURT:  June 2nd at 9:30.

23             MS. MORA JAMES:  That will work, Your Honor.

24             THE COURT:  All right.  Is there anything else that

25     we need to take up?  Mr. Klein?

22

1          MR. KLEIN:  No, Your Honor.

2          THE COURT:  Ms. Mora James?

3          MS. MORA JAMES:  Just that I want to make sure that

4    Count I is dismissed.

5          THE COURT:  Count I -- that will be taken up at the

6    time of sentencing.

7          MS. MORA JAMES:  All right.

8          THE COURT:  All right.  We are in recess.

9               (11:22 A.M. -- END OF HEARING)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

TRANSCRIBER'S CERTIFICATE

I, a court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated this 5th day of March, 2017.


/s/ Diana Wilkey
Transcriber